Appeal from City Court of New York.

Action by Thomas F. McHugh against the Metropolitan Street Railway Company. From an order of the New York City Court, dismissing plaintiff's complaint, he appeals. Reversed.

Argued before GILDERSLEEVE, DUGRO, and DOWLING, JJ.

Kurzman & Frankenheimer (Nathan Ottinger, of counsel), for appellant.

Bayard H. Ames, for respondent.

GILDERSLEEVE, J. This is an appeal from an order of the Special Term of the City Court. The facts appear to be substantially as follows, viz.: The action is for personal injuries. Issue was joined on January 19, 1900. Notice of trial was served by both parties in July, 1900, and in the same month the case was put on the calendar by plaintiff. The cause appeared several times on the day calendar, and was adjourned, sometimes at the request of one party and sometimes at the request of the other, but always on consent of both parties. Negotiations were going on in the meanwhile with a view to a settlement. On February 6, 1905, when the case appeared again on the calendar, although there was a stipulation in which both parties consented to a further adjournment to April, the court sent the case to the foot of the calendar. Before the case had again been reached for trial, defendant made a motion, under section 822 of the Code and rule 36 of the General Rules of Practice, to dismiss the complaint for want of prosecution, which motion was granted; and from the order granting such motion plaintiff now appeals to this court. It is undisputed that the cause was put upon the calendar in July, 1900, and was duly noticed for trial by both parties, and that all adjournments have been made either at the request or with the consent of the defendant. On each occasion, when the cause appeared on the day calendar, defendant waived whatever right it may have had to an immediate trial by consenting to an adjournment. Under these circumstances, defendant is not in a position to charge plaintiff with laches in the prosecution of the action. The dismissal of the complaint will inflict a great hardship upon the plaintiff, and in view of the defendant's complicity, to say the least of it, in all the delays and adjournments, we are of opinion that the exercise of a wise discretion should have prompted the learned court below to deny the motion.

Order reversed, with $10 costs and disbursements.

DOWLING, J., concurs. DUGRO, J., took no part.

---

CLARK v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

MASTER AND SERVANT—ASSUMED RISKS—OPERATION OF RAILROADS.

In shifting cars jolts from failures of attempts to uncouple cars constantly occur, against which brakemen are required to guard themselves from injury, and are risks which they assume in the course of their em-

ployment, and no recovery can be had where an injury results, although the jolt causing the injury was attributable to a defective coupler.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 554.]

Kruse, J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Annie M. Clark, as administratrix of George O. Clark, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

A. H. Cowie, for appellant.

A. Lee Olmsted, for respondent.

NASH, J. The action is to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant.

The plaintiff's intestate was a freight brakeman in the employ of the defendant at the time of his death. His train arrived at Seneca Falls about 4 p. m., September 25, 1905, where there were three tracks, the main track on the south, a passing siding next north, and next a storage siding, on which there was a string of five or six cars, the most westerly of which was a hay car to be taken on. For that purpose the engine and one car, referred to as the "Syracuse" car, was detached from the easterly end of the train and run over onto the storage siding. A coupling was made to the easterly car of the string, which was a Michigan Central car, and they were pulled down to the east until the hay car cleared the point of the switch leading from the storage to the passing siding, and was backed in and coupled to the train. Then the rest of the cars of the string were pulled out for the purpose of placing them back on the storage siding. There were automatic couplers on the Syracuse car and the Michigan Central car. As the engine backed the string westerly on the storage siding, Hoy, a brakeman, walked alongside, for the purpose of cutting the coupling between the Syracuse and Michigan Central cars. The speed was about four or five miles an hour. There was a slight curve in the track, so that the engineer could not see Hoy when close to the train. When it was time to make the cut, Hoy stepped out from the train and signaled the engineer to slow up or stop, which he did, reducing the speed to about two miles an hour or nearly to a stop. This had the effect of letting out the slack and loosening the coupler between the cars. Hoy then stepped in and tried by lifting the lever to pull the pin which held together the coupling between the Syracuse car and the Michigan Central car. The lever turned without lifting the pin, and he thus failed to uncouple the cars, which were brought up with a jerk by the stoppage of the engine. Then Hoy signaled the engineer to back easy, and when the slack came he pulled the pin by hand. At the time that Hoy first failed to pull the pin the plaintiff's intestate was walking westerly along the top of the rear car, within two or three feet

of the west end of it, and when the jolt came, because of the stoppage of the engine, he pitched forward, head foremost, over the end of the car to the track, and was run over, causing the injuries which resulted in his death. The failure of the operating lever to lift the pin which held together the coupling on this occasion is attributed to a broken clevis between the operating lever and the pin of the automatic coupler, which the defendant had neglected to repair. This is the sole ground of alleged negligence on the part of the defendant.

There are various causes for failures of attempts to uncouple cars not attributable to defective couplers or machinery. The pins stick, caused by rust or dirt in the coupler, the links of the coupler become battered, or the pins bind on a curve, or the slack is not sufficiently taken up, and in other ways there are failures to uncouple, resulting in the letting out of the slack bring the cars up with a jerk, as on this occasion. In shifting cars jolts from the causes mentioned constantly occur, against which the brakemen are required to guard themselves from injury. They are the usual and ordinary results of moving cars in railroad yards, risks which they take in the course of their employment.

We think it was error to submit the case to the jury, and for that reason the judgment must be reversed, and a new trial granted upon questions of law only. All concur, except KRUSE, J., who dissents.

---

(51 Misc. Rep. 640.)

### MULLER v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term. November 14, 1906.)

1. STREET RAILROADS—OPERATION—COLLISIONS WITH VEHICLES—QUESTION FOR JURY.

Where, in an action against a street railroad for damages to plaintiff's vehicle caused by a collision with a car, it appeared that at a street intersection plaintiff turned to cross the track, the car then being a block distant, and that the car struck the rear wheel of the wagon while it was crossing the track, and the horse was going at a fast walk or slow trot, the question of negligence was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, §§ 251, 255–257.]

2. SAME.

Where one about to drive his horse across a street car track at a street intersection looked and saw a car approaching at the distance of a block, but did not again look at the car, and a collision ensued, the question of contributory negligence was for the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, §§ 255–257.]

Appeal from Municipal Court, Borough of Manhattan, Eighth District.